SNYDER'S DRUG STORES, INC. v. MINNESOTA STATE BOARD OF PHARMACY.
MINNESOTA STATE PHARMACEUTICAL ASSOCIATION AND OTHERS, INTERVENORS.
MINNESOTA PUBLIC INTEREST RESEARCH GROUP AND ANOTHER, APPELLANTS.

221 N. W. 2d 162.

August 9, 1974—No. 44624.

*Dayton & Herman* and *John H. Herman,* for appellants.

*Gray, Plant, Mooty & Anderson* and *Michael Cunningham,* for respondent plaintiff.

*Robert T. Stich,* Special Assistant Attorney General, for respondent Minnesota State Board of Pharmacy.

*Mastor & Mattson, Robert Mattson,* and *A. B. Seran,* for intervenors.

Heard before Sheran, C. J., and Kelly, Todd, Yetka, and Scott, JJ., and considered and decided by the court.

YETKA, JUSTICE.

This action was brought by Snyder's Drug Stores, Inc., against the Minnesota State Board of Pharmacy (hereinafter referred to as the board) to set aside a regulation (Minn. Reg. Pharm. 37[k]) issued by the latter which prohibits pharmacists from advertising retail prices of prescription drugs. Snyder alleges the regulation violates due process of law, imposes an unconstitutional burden on interstate commerce, and is in excess of the board's statutory authority.

Thereafter the court allowed the Minnesota State Pharmaceutical Association and its officers to intervene as defendants. Two other organizations sought to intervene as parties plaintiff under Rule 24.01, Rules of Civil Procedure, or, in the alternative, under Rule 24.02. This appeal is from the district court's order denying those motions. We reverse.

In their motion for intervention appellants alleged the following:

30

1. Appellant Minnesota Public Interest Research Group (hereinafter referred to as MPIRG) is a Minnesota nonprofit corporation supported by over 90,000 students of colleges and universities in this state. This corporation has been an active advocate of a wide variety of consumer protection laws and regulations.

2. MPIRG members have conducted drug price surveys and have lobbied for legislation allowing prescription drug advertising.

3. Individual MPIRG members have been prevented from purchasing prescription drugs at the lowest prices due to lack of advertising.

4. Appellant Metropolitan Senior Citizens Federation (hereinafter referred to as MSCF) is a Minnesota nonprofit corporation consisting of metropolitan area senior citizen organizations.

5. Senior citizens comprise 10 percent of the population and yet make 25 percent of all drug purchases due to their age and health, and therefore knowledge of where to buy at the lowest prices obtained via advertising is of particular importance to this segment of the population.

6. MSCF has an active task force whose surveys of metropolitan drugstores have revealed large price disparities. Without advertising it is difficult for senior citizens to shop for low drug prices or locate those stores which give discounts to senior citizens pursuant to Minn. St. 151.26.

7. Appellants have a direct interest in the litigation and are so situated that disposition as a practical matter may impede or impair their ability to protect their interests. The existing plaintiff, a drugstore chain, cannot be certain to fully and adequately represent the interests of prescription drug consumers.

8. Appellants seek to place in evidence testimony regarding the effect of the ban which may not otherwise come before the court.

9. Appellants' petition raises one new Minnesota constitu-

tional cause of action, which, as a practical matter, is identical to the Federal constitutional issues raised by plaintiff and does not impose an additional burden upon the defendants.

10. Appellants raise issues of law and fact in common to those raised by plaintiff.

The district court found appellants to have an *indirect* interest in the instant litigation and thus denied their motion to intervene on grounds that they lacked standing; that grounds for intervention of right did not exist; and that permissive intervention was not warranted.

The issues raised on this appeal are:

1. Do nonprofit consumer advocate corporations who allege economic injury to their individual members resulting from a ban on retail prescription drug price advertising imposed by State Board of Pharmacy Regulation 37(k) have standing to challenge the validity of said regulation under Minn. St. 15.0416?

2. Under Rule 24.01, Rules of Civil Procedure, may appellants intervene as of right?

3. Did the trial court abuse its discretion in refusing to allow permissive intervention to appellants under Rule 24.02, Rules of Civil Procedure?

In determining whether conditions for intervention have been met, the court will look to the pleadings and, absent sham or frivolity, a court will accept the allegations in the pleadings as true. Kozak v. Wells, 278 F. 2d 104, 109, 84 A. L. R. 2d 1400, 1406 (8 Cir. 1960). Secondly, on motion to intervene of right, the merits of the proposed complaint are not to be determined. Kozak v. Wells, *supra*.

■ First must be decided the question of whether or not appellants have "standing" to challenge the validity of Board of Pharmacy Regulation 37(k). In support of their position appellants have cited a number of Federal decisions. At this point it is important to note that this court is not necessarily bound to adhere to the Federal standard when interpreting Minn. St. 15.0416, even though this provision is similar to its Federal

counterpart. Indeed, the Federal doctrine of standing has been described as "this 'complicated specialty of federal jurisdiction' which can be fathomed only by 'the expert feel of lawyers.' "[1]

Professor Kenneth C. Davis has advocated that Federal courts adopt the standard that—

"* * * A person whose legitimate interest is injured in fact should have standing unless a legislative intent is discernible that the interest he asserts is not to be protected."[2]

Professor Davis also notes, in broad terms, that state courts have usually tended to adopt the much simpler "injury in fact" concept of standing.[3] We feel the view of Professor Davis is well conceived and thus adopt "injury in fact" as the test for standing in this jurisdiction, absent a discernible legislative intent to the contrary in a given case.

■ Federal courts have long recognized that in certain cases consumers have standing. Bebchick v. Public Utilities Comm. 109 App. D. C. 298, 287 F. 2d 337 (1961), rider of transit system allowed to challenge fare increase; United States v. Public Utilities Comm. 80 App. D. C. 227, 151 F. 2d 609 (1945), customer allowed to challenge increase in electricity rates; Associated Industries v. Ickes, 134 F. 2d 694 (2 Cir. 1943), vacated as moot, 320 U. S. 707, 64 S. Ct. 74, 88 L. ed. 414 (1943), customer allowed to challenge increase in coal prices.

In the case at bar, the trial court characterized appellants' interest as "indirect." In light of the recent United States Supreme Court decision in United States v. SCRAP, 412 U. S. 669, 93 S. Ct. 2405, 37 L. ed. 2d 254 (1973), the trial court's conclusion

---

[1] Note, 51 B. U. L. Rev. 403, 405, quoting United States ex rel. Chapman v. FPC, 345 U. S. 153, 156, 73 S. Ct. 609, 612, 97 L. ed. 918, 925 (1953), and Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U. S. 123, 150, 71 S. Ct. 624, 637, 95 L. ed. 817, 842 (1951) (Frankfurter, J., concurring).

[2] Davis, Administrative Law Treatise, § 22.21, p. 784 (Supp. 1970). See also, Note, 51 B. U. L. Rev. 403, 405, note 16.

[3] Davis, Administrative Law Treatise, § 22.01, p. 210.

appears erroneous. In SCRAP certain groups composed of private citizens were allowed to challenge the Interstate Commerce Commission's refusal to force railroads to suspend during investigation of the new rate a recent surcharge levied on freight rates for hauling, among other things, recyclable materials. Plaintiff groups alleged that (1) their members used certain areas for outdoor recreation, and (2) the surcharge caused an adverse environmental impact on these areas caused by the nonuse of recyclable goods brought about by the rate increase. This was held to be "injury in fact" sufficient to allow standing under the Federal Administrative Procedure Act. 5 USCA, § 702.[4]

Several questions further illustrate the merit of appellants' position. If no drug retailer chose to challenge the validity of Regulation 37(k), would that mean that no other class of potential plaintiffs would have standing to challenge the provision in question? Secondly, the question arises: For whose benefit was the regulation enacted?

The ultimate intended beneficiaries of the regulation are the consumers of prescription drugs. No matter how the regulation is drawn, the effect, if we are to accept appellants' allegations as true, is economic vis-a-vis the consumers.

In addition, appellant MSCF is composed of senior citizens who allegedly comprise only 10 percent of our population and yet consume 25 percent of all prescription drugs due to their age and health. Thus, the allegedly inflated or noncompetitive drug prices affect this group to a disproportionate degree. Further accentuating this economic impact is the fact that many of our senior citizens live on fixed incomes. The court takes judicial notice of the current economic conditions of ballooning inflation which works particular hardship on those who must live on fixed incomes.

---

[4] See, also, Sierra Club v. Morton, 405 U. S. 727, 92 S. Ct. 1361, 31 L. ed. 2d 636 (1972). This case held that standing was properly denied to an environmental preservation group which erred in pleading by failing to allege injury to its individual members.

At the outset it should be noted that intervention under Rule 24.02 is clearly discretionary with the trial court and the trial court will not be reversed unless there is a showing of clear abuse of that discretion. Bumgarner v. Ute Indian Tribe of Uintah and Ouray Res. 417 F. 2d 1305, 1309 (10 Cir. 1970). However, this is not to say that a trial court is not subject to reversal in appropriate cases and we hold this is such a case.

In the case at bar, the trial court evidently felt that allowing appellants to intervene would enhance the complexity of the litigation in a case involving a "rather simple and narrow issue of law." The court did not elaborate on the reasons underlying this conclusion.

There appear to be two possible sources of enhancement of complexity of the litigation which would result from appellants' intervention. First, it is appellants' contention that they would introduce evidence that would bear on the issues already in the case. This may add to the record, but such a contribution would, if anything, be a beneficial addition allowing for a more informed decision by the court.

As to the second source of complexity, which is the introduction of one additional issue to the case, appellants argue that this would not, as a practical matter, place an added burden on the defendants. It is beyond question that the purpose of Rule 24.02 is to further enhance efficient use of our overburdened courts. In this case, the basic question before the district court is to determine the validity of Regulation 37(k). Plaintiff has attacked this provision on United States constitutional grounds and on grounds it exceeds the scope of the enabling statute. It would seem to be in the best interests of judicial economy to rule in *one* lawsuit on all potential grounds upon which the statute could be held invalid. This is especially true where the issue to be added by intervention, as a practical matter, is identical to the Federal constitutional challenges now at issue. Further, it is not improbable that this case will be appealed to this court on the merits. Should this prediction become fact, would not this

court desire to enter a definitive comprehensive opinion in light of *all* possible grounds of invalidity in order to avoid a second appeal?

There is no question that appellants raise questions of law and fact common to those present in the primary litigation.

Without intervention in this case, we have a plaintiff which is a pharmaceutical outlet regulated by the Minnesota State Board of Pharmacy, the original defendant. Moreover, the employee-pharmacists of Snyder belong to the Minnesota State Pharmaceutical Association, which was permitted to intervene as a defendant. Not allowing the appellants to intervene means that really no one representing the consuming public has any part in the lawsuit since it is conceded on argument by the State Board of Pharmacy that it is not *per se* concerned with the impact that Regulation 37(k) has upon drug prices, and yet the board claims to represent the public.

The other parties to the primary litigation are also pharmacists. This leads us to the inescapable conclusion that, absent intervention by appellants, the parties on both sides of this lawsuit represent exclusively the interests of retail sellers of prescription drugs. It would be disturbing that this exclusive group would have virtual control of litigation which has such a potentially significant effect on those who must purchase a commodity essential to maintain their health. It is difficult to imagine a case more appropriate and needful of consumer participation. If this action had not been brought by a pharmacist, a potentially unlawful restriction on price advertising could continue indefinitely while members of the public are forced to acquiesce and stand idly by. This court would be hard pressed to envision a case more appropriate for permissive intervention under Rule 24.02 than the case now before us on appeal and we feel that the need for appellants to intervene is so obvious that the court erred in refusing to allow said intervention.

Since we find that the court erred in not granting the order sought by appellants to allow them to intervene under Rule 24.02,

we need not decide whether appellants would have a right to intervene of right under Rule 24.01.

Reversed and remanded.