MINNESOTA EDUCATION
ASSOCIATION, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 404, LAKE BENTON, Minnesota,
et al., Respondents.

No. 49254.

Supreme Court of Minnesota.

Jan. 11, 1980.

Robins, Davis & Lyons, Stephen D. Gordon, and Ernest I. Reveal, III, St. Paul, for appellant.

Peterson, Popovich, Knutson & Flynn, James E. Knutson, and Thomas M. Sipkins, St. Paul, for respondents.

Heard before PETERSON, KELLY, and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

Plaintiff, Minnesota Education Association (MEA), appeals from the order of the district court dismissing with prejudice its

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.Stat. § 2.724, subd. 2 (1978).

unfair labor practice action brought under the Public Employment Labor Relations Act (PELRA), Minn.Stat. § 179.68, subd. 2(1), (5) (1978), against defendants, Independent School District No. 404, Lake Benton, Minnesota (the District), and the individual members of the school district's board of education. The district court ruled that the MEA was not the real party in interest; that the underlying controversy was moot; and that the MEA had failed to diligently prosecute the action. We affirm.

The MEA is an incorporated association organized for the purpose of representing various teachers in labor relations in the State of Minnesota. The Lake Benton Education Association (LBEA) is an incorporated association of teachers employed by the District, which at all times material to this dispute has been the exclusive bargaining representative, as defined in Minn.Stat. § 179.63, subd. 6 (1978), for all certified teachers employed by the District. The District is located in Lake Benton, a small community in southwestern Minnesota. During the 1977–1978 school year, the District had a total enrollment of approximately 400 students and employed approximately 35 teachers.

On November 16, 1977, following an impasse in contract negotiations, the LBEA started a lawful strike against the District. The next day, the MEA and the LBEA brought this action against defendants under Minn.Stat. § 179.68, subds. 1 and 2(1) and (5) (1978),[1] claiming they had committed unfair labor practices. The district court issued a temporary restraining order against defendants on November 18, 1977.[2]

On November 25, 1977, defendants answered the amended complaint and counterclaimed against the MEA and the LBEA, alleging that certain picket line conduct constituted unfair labor practices.

After conducting a hearing on November 25, 1977, the district court issued an order on November 30 "temporarily and permanently" enjoining defendants in conformity with the temporary restraining order granted on November 18, 1977, except that defendants were not enjoined from compensating replacement teachers at a rate of pay higher than that offered entry-level teachers during contract negotiations. The district court denied plaintiffs' application for an order temporarily restraining defendants from hiring unlicensed teachers and from advertising for replacement teachers without stating that a strike was in progress. However, the district court scheduled a hearing for December 13, 1977, for the purpose of considering those matters in the context of a motion for a temporary injunction. The district court also partially granted the defendants' application for a temporary restraining order by enjoining plaintiffs from coercing and restraining teachers and other employees from providing service to the District and from threatening and harassing non-striking teachers.

The strike ended on December 6, 1977, when the teachers and the District agreed

---

1. Minn.Stat. § 179.68 (1978) provides in relevant part:

Subdivision 1. The practices specified in this section are unfair practices. Any employee, employer, employee or employer organization, exclusive representative, or any other person or organization aggrieved by an unfair labor practice as defined in sections 179.61 to 179.77 may bring an action in district court of the county wherein the practice is alleged to have occurred for injunctive relief and for damages caused by such unfair labor practice.

Subd. 2. Public employers, their agents or representatives are prohibited from:

(1) interfering, restraining or coercing employees in the exercise of the rights guaranteed in sections 179.61 to 179.77;

   *    *    *    *    *

(5) refusing to meet and negotiate in good faith with the exclusive representative of its employees in an appropriate unit * * *.

2. The order issued November 18, 1977, temporarily restrained defendants from (1) bargaining in bad faith by insisting upon introducing retroactive pay as a new issue in negotiations; (2) compensating replacement teachers at higher rates of pay than offered during negotiations for entry-level teachers; (3) permitting replacement teachers to discuss the status of negotiations with students in the classrooms and elsewhere on school premises; and ordered respondents to (4) take affirmative steps to prevent children of striking LBEA members from being subject to harassment or physical and verbal abuse on school premises.

on a new contract. The hearing scheduled for December 13, 1977, did not occur.[3]

On February 14, 1978, the LBEA and the District signed the new collective bargaining agreement. In a memorandum of understanding appended to the agreement, the LBEA and defendants agreed to drop "all lawsuits and legal actions" then pending against each other. Thus, the LBEA is not involved in this appeal. The MEA was not a party to the agreement and was not mentioned in the memorandum of understanding.

The MEA initiated discovery on March 23, 1978. On June 19, 1978, defendants served a motion to dismiss on grounds of mootness, justiciability, and failure to state a claim for which relief can be granted. At the conclusion of a hearing conducted on June 26, the district court granted the motion to dismiss, ruling that (1) the cause of action was moot because the strike had ended, the LBEA members had returned to work, and the LBEA and the District had executed a collective bargaining agreement; (2) the MEA was not the real party in interest; and (3) the MEA had failed to diligently prosecute the action.

This appeal from the order dismissing MEA's action raises the following questions: (1) Does the MEA have standing to continue this action either as an aggrieved party under PELRA, Minn.Stat. § 179.68, subd. 1 (1978), or as an organization representing the interests of its members? (2) Is this action moot? (3) Was the action properly dismissed for lack of diligent prosecution?

■ 1. The district court concluded that the MEA was not the real party in interest.[4] Determining the real party in interest is ordinarily a question of fact for the trial court, *Colstad v. Levine*, 243 Minn. 279, 67 N.W.2d 648 (1954), whose factual findings must be upheld unless clearly erroneous. Rule 52.01, Minn.R.Civ.P. We conclude that on the District's motion to dismiss, viewing the underlying facts in a light most favorable to the MEA, the trial court as factfinder reasonably could find that the MEA was not the real party in interest.

■ Rule 17.01, Minn.R.Civ.P., provides *inter alia* that "a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought." The MEA argues (a) that by virtue of the allegations of the District's unfair labor practices in its second amended complaint, it is a party "aggrieved" by those practices within the meaning of Minn.Stat. § 179.68, subd. 1 (1978), and therefore is authorized by statute to sue in its own name in accordance with Rule 17.01; and (b) that it has standing to sue because it represents the interests of the LBEA and the LBEA's member teachers, who are "aggrieved" under Minn.Stat. § 179.68, subd. 1 (1978). Both contentions turn on whether the MEA or its members are "aggrieved" within the meaning of Minn.Stat. § 179.68, subd. 1 (1978), a jurisdictional provision of PELRA which provides that "[a]ny employee, * * *, organization, exclusive representative, or any other person or organization *aggrieved* by an unfair labor practice as defined in sections 179.61 to 179.77 may bring an action in district court * * * for injunctive relief and for damages caused by such unfair labor practice." (Emphasis added.)

---

**3.** The record does not disclose why the December 13 hearing was not conducted. MEA asserts that it was "postponed." Defendants assert that MEA and LBEA "simply did not show up for the hearing." There is no evidence that either the MEA or the LBEA rescheduled the hearing.

**4.** In dismissing the action, the trial court found that:

[T]he Minnesota Education Association became involved in this action solely because the Lake Benton Education Association and its members were involved, and they are the real parties in interest. There is nothing contained in the prayer for relief that [in] any way asks for any relief whatsoever on behalf of the Minnesota Education Association, and the Court cannot conclude anything but that there were initially no issues for this Court to determine insofar as Minnesota Education Association was concerned, independent of those raised by the Lake Benton Education Association.

The term "aggrieved" in Minn.Stat. § 179.68, subd. 1 (1978) is undefined. But this court has interpreted the term "aggrieved party" in other situations. In *In re Trust in Estate of Everett*, 263 Minn. 398, 401, 116 N.W.2d 601, 603 (1962), interpreting "aggrieved party" under Minn.Stat. § 605.09 (1961), we said that "a person having no interest in the subject * * * cannot be aggrieved * * *." More recently, in interpreting an "aggrieved party" under Minn.Stat. § 15.0426 (1978), we noted: "The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation." *In re Getsug*, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971).[5]

The above considerations are similar to the considerations of the "injury-in-fact" test for standing, which we adopted in *Snyder's Drug Stores v. Minnesota Bd. of Pharm.*, 301 Minn. 28, 221 N.W.2d 162 (1974). There we quoted with approval the following proposal of Professor Kenneth C. Davis: "A person whose legitimate interest is injured in fact should have standing unless a legislative intent is discernible that the interest he asserts is not to be protected." Davis, *Administrative Law Treatise*, § 22.21, at 784 (Supp.1970) (301 Minn. 32, 221 N.W.2d 165).

The record shows that the LBEA was the teachers' exclusive representative and that in that capacity it directly negotiated with the District. The MEA served only as a resource and supporting organization to the LBEA's effort. As such, the MEA cannot show the injury-in-fact required to continue the same action which the teachers' exclusive representative, the LBEA, agreed to dismiss. We perceive no legitimate interest of the MEA which is or was injured by any alleged unfair labor practice committed by the District in November or December 1977, apart from injury to the negotiating efforts of the LBEA, claims for which were resolved by the stipulated dismissal.[6]

The MEA asserts that if it is denied an opportunity to challenge the District's unlawful activity, its "ability to represent its membership will be effectively thwarted." However, it has not explained exactly how its effective representation will be thwarted. Further, the MEA argues that it will suffer a substantial loss of membership dues if it appears as ineffective and a mere auxiliary behind the local organization. This argument seems to us a specious attempt to create a personal injury where no substantial or legitimate one exists. Thus, because the MEA has failed to demonstrate any claims of unfair labor practices independent of those dismissed by the LBEA, we reject the contention that the MEA itself is an "aggrieved" labor organization within the meaning of Minn.Stat. § 179.68, subd. 1 (1978).

■ While we recognize that an organization may have standing to assert claims arising from direct injury to its members' interests,[7] we do not agree that individual Lake Benton teacher members of the LBEA and MEA can still assert a personal injury through the MEA because they personally were not parties to the memorandum of understanding. To so hold in the circumstances of this case would render suspect any agreement executed by an organization for its members, by allowing those members to subvert the agreement by presenting their claims under the auspices of another organization to which they may belong. This we decline to do.

5. See, also, *In re Petition of Abel*, 253 Minn. 452, 92 N.W.2d 800 (1958) (one cannot achieve aggrieved party status by loaning one's name to those who are aggrieved parties); *Singer v. Allied Factors, Inc.*, 216 Minn. 443, 13 N.W.2d 378, (1944) (party aggrieved is one whose personal right is injuriously affected by the adjudication.

6. Ordinarily, a stipulated dismissal of an action with prejudice bars as res judicata another action on the same claim, *Amalgamated Meat Cutters v. Club 167, Inc., et al.*, 295 Minn. 573, 204 N.W.2d 820 (1973). We take the LBEA's stipulated dismissal as a resolution on its behalf of any outstanding claims of unfair labor practices.

7. See, *Warth v. Selden*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *No Power Line, Inc. v. Minnesota EQC*, 311 Minn. 330, 250 N.W.2d 158 (1976).

Thus, we hold that the MEA lacks standing, either as an "aggrieved" organization under Minn.Stat. § 179.68, subd. 3 (1978), or as an organization asserting injuries to its members' interests, to continue this unfair labor practice action. It follows that the MEA is not the real party in interest under Rule 17.01, Minn.R.Civ.P.

2. Because we hold that the MEA has no standing to continue this lawsuit, it is unnecessary to reach the issues of mootness and the merit of the district court's finding that the MEA failed to diligently prosecute this action.

Affirmed.