**NEWMECH COMPANIES, INC.,**
Appellant (C1–93–1500) Plaintiff
(C8–93–1509),

v.

**INDEPENDENT SCHOOL DISTRICT**
NO. 206, Respondent (C1–93–1500)
Defendant (C8–93–1509)

Manning Mechanical, Inc., a North Dakota corporation, Respondent (C1–93–1500), Defendant (C8–93–1509),

State of Minnesota, Intervenor, Respondent (C1–93–1500), Defendant Below (C8–93–1509).

Scott ANDERSON, et al., Plaintiffs (C1–93–1500) Appellants (C8–93–1509),

v.

**INDEPENDENT SCHOOL DISTRICT NO.**
206, Alexandria, Minnesota, Defendant (C1–93–1500) Respondent (C8–93–1509).

Nos. C1–93–1500, C8–93–1509.

Court of Appeals of Minnesota.

Dec. 14, 1993.

**580**

Gerald S. Duffy and Rosemary Tuohy, Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, for NewMech Companies, Inc., appellant/plaintiff.

John C. Lervick Swenson, Grover, Lervick, Syverson & Battey, Ltd., Alexandria, James E. Knutson and Stephen M. Knutson, Knutson, Flynn, Hetland, Dean & Olsen, P.A., St. Paul, for Independent School Dist. No. 206, respondent/defendant.

Brad A. Sinclair and LeDonne R. Vik, Serkland, Lundberg, Erickson, Marcil, McLean, Ltd., Fargo, ND, for Manning Mechanical, Inc., a North Dakota corporation, respondent/defendant.

Hubert H. Humphrey, III, State Atty. Gen. and Scott R. Strand, Asst. Atty. Gen., St. Paul, for State of Minn., intervenor, respondent/defendant.

Stephen D. Gordon and Paul W. Iversen, Gordon–Miller–O'Brien, Minneapolis, for Scott Anderson, et al., plaintiffs/appellants.

Considered and decided by KLAPHAKE, P.J., PETERSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellants NewMech Companies (NewMech), Scott Anderson, et al. (taxpayers) and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 126 (Local 126) sought a temporary restraining order (TRO) and permanent injunction against Independent School District No. 206 (ISD) and Manning Mechanical (Manning). Their purpose was to restrain ISD and Manning from proceeding with work on a mechanical contract that did not include a provision requiring Manning to pay prevailing wages to its laborers. The trial court first granted a TRO, but later dissolved it and denied a permanent injunction. The trial court also found that Local 126 did not have standing to bring suit. NewMech, taxpayers, and Local 126 appeal. We affirm in part, reverse in part, and remand.

## FACTS

In April 1992, after the Department of Education approved ISD's request to build a new junior high school in Alexandria, ISD obtained voter approval to sell bonds to pay for the project. The resulting increase in ISD's bonded indebtedness will trigger the flow of state debt service equalization aid to ISD through its debt redemption fund. In the materials used to promote sale of its bonds, ISD stated that debt redemption funds would be used to make principal and interest payments on the bonds.

Minn.Stat. §§ 177.41–.44 (1992), the Prevailing Wage Act (PWA), requires contractors to pay prevailing wages where the state wholly or partially provides financing for school construction. Before ISD entered construction contracts, labor union representatives expressed concern as to whether prevailing wages would be paid. The Attorney General's (AG) office called ISD's counsel and suggested that the school board delay bid opening because an AG opinion had been requested on whether debt service equalization aid constitutes financing to which the PWA applies. At a public meeting, the ISD board considered the applicability of the

PWA, but decided not to include a prevailing wage provision in its bid specifications.

ISD then published bid invitations. Believing that debt service equalization aid constitutes state financing under the PWA, various contractors and union representatives again requested inclusion of prevailing wage provisions in the project's contracts.

The ISD board, however, reaffirmed its decision to exclude prevailing wage provisions from the contracts. When the board opened bids, Manning was the lowest bidder and NewMech was the second lowest bidder on the mechanical contract. ISD and Manning executed a contract that does not require payment of prevailing wages.

The ISD board was subsequently informed of an informal AG opinion that the PWA applies to school construction projects where a school district receives state debt service equalization aid. The board, however, did not convene a special meeting to reconsider the contracts.

Dissatisfied with this situation, NewMech commenced an action against ISD and Manning to restrain performance of the mechanical contract. Local 126 and three individual taxpayers (all Local 126 members) began a similar lawsuit against ISD. The trial court issued a TRO restraining Manning from proceeding with any work on the mechanical contract. The trial court subsequently dissolved the TRO and denied a permanent injunction. In addition, it held that Local 126 did not have standing to bring suit. NewMech, the taxpayers, and Local 126 appeal the trial court's denial of the injunction.

## ISSUES

1. Did NewMech and Local 126 demonstrate requisite injury from ISD's failure to comply with the PWA to establish standing to bring suit against ISD?

2. Does the use of state debt service equalization aid funds to pay interest and principal on bonds issued for ISD's school construction constitute state financing under the Prevailing Wage Act, thereby requiring ISD to include a prevailing wage provision in its construction contracts?

## ANALYSIS

■ 1. *Standard of Review.* On appeal from a judgment denying injunctive relief, this court must generally determine whether the trial court abused its discretion. *Bush Terrace Homeowners Ass'n. v. Ridgeway,* 437 N.W.2d 765, 768 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989). In this case, however, the trial court denied a permanent injunction based upon its interpretation of the Prevailing Wage Act. The construction of a statute is a question of law subject to de novo review on appeal. *Sorenson v. St. Paul Ramsey Medical Ctr.,* 457 N.W.2d 188, 190 (Minn.1990). Accordingly, we review de novo the trial court's construction of the PWA.

■ 2. *Standing: NewMech.* Manning disagrees with the trial court determination that NewMech had standing to bring this action. Manning, however, did not file a notice of review of this issue. Generally, a respondent must file a notice of review to obtain review of an issue. Minn.R.Civ. App.P. 106. But since standing is essential to this court's jurisdiction over NewMech, we raise the issue on our own motion. *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27 (Minn.1989).

The trial court found that Minnesota permits an unsuccessful bidder, such as NewMech, to bring suit against an entity awarding a public works contract. *See Carl Bolander & Sons Co. v. City of Minneapolis,* 451 N.W.2d 204, 206 (Minn.1990) (unsuccessful bidder for municipal construction contract permitted to sue Minneapolis Park and Recreation Board); *Telephone Assocs. v. St. Louis County Bd.,* 364 N.W.2d 378, 383 (Minn.1985) (unsuccessful bidder for contract to install phone service in new state office building permitted to sue St. Louis County). In *Telephone Associates,* the supreme court encouraged "proper challenges to the bid-letting process" (one component of which is a duty to comply with all applicable statutes, including the PWA). *See id.* at 382–83.

Relying on *Counties of Blue Earth v. Minnesota Dep't of Labor & Indus.,* 489 N.W.2d 265, 268 (Minn.App.1992), Manning argues that the legislature did not intend to

provide a judicial remedy under the PWA before administrative remedies are exhausted. Consequently, it urges that the court erred in granting NewMech standing because NewMech did not first exhaust administrative remedies.

The trial court correctly distinguished *Blue Earth*. *Blue Earth* involves a challenge by various counties to a Department of Labor and Industry prevailing wage rate determination. *Id.* at 267. In *Blue Earth*, this court found that there was no private cause of action because the plaintiffs failed to seek relief through the statute's administrative hearing process before seeking injunctive relief. *Id.* at 268. Unlike in *Blue Earth*, here the question is whether the PWA applies to the facts of this case, a question to be decided by the courts as a matter of law. *C & C Teletronics, Inc. v. U.S. West Info. Sys.*, 414 N.W.2d 758, 761 (Minn.App.1987), *pet. for rev. denied* (Minn. Jan. 20, 1988). We hold that the trial court properly recognized New-Mech's standing to seek injunctive relief.

3. *Standing: Local 126.*

A person whose legitimate interest is "injured in fact" has standing to pursue a claim absent a discernible legislative intent to the contrary.

*Byrd v. Independent Sch. Dist. No. 194*, 495 N.W.2d 226, 230 (Minn.App.1993) (citing *Snyder's Drug Stores v. Minnesota State Bd. Of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974)), *pet. for rev. denied* (Minn. Apr. 20, 1993). The trial court found that Local 126 did not demonstrate injury in fact and denied the union standing. We agree.

■ Relying on *Byrd*, Local 126 argues that if the union shows that its members would have received jobs if the proper bid procedure had been followed, standing would exist. Local 126 submitted two affidavits indicating that had NewMech been awarded the bid, it would have hired Local 126 members. But Local 126 misses a step in its analysis. Unless Local 126 provides some evidence that NewMech would have secured the contract if the PWA had been followed, the affidavits are ineffective. The union presented no such evidence.

If the prevailing wage requirement had been included in the bid specifications, Manning or another bidder might have submitted a bid lower than that of NewMech. Local 126 cannot prove otherwise.

Local 126 also contends that it has standing because when an organization alleges injury to its members, it has standing to sue under its own name. *See Snyder's Drug*, 301 Minn. at 32–33, 221 N.W.2d at 165. It reasons that because three Local 126 members had standing based on their status as taxpayers, Local 126 also has standing.

In *Snyder's Drug*, the Metropolitan Senior Citizens Federation (MSCF) was granted standing to challenge a federal regulation prohibiting pharmacists from advertising prescription drug retail prices. *Id.* at 33–35, 221 N.W.2d at 166–67. MSCF is composed of senior citizens, a class that was found to consume 25 percent of all prescription drugs. *Id.* at 33, 221 N.W.2d at 166. The court found that MSCF had standing because the persons injured by the challenged regulation were consumers, many of whom were senior citizens represented by MSCF. *Id.* at 33–35, 221 N.W.2d at 166–67. Moreover, the court noted its concern that if MSCF were not granted standing, there would be no other class of persons with standing to challenge the regulation. *Id.* at 35, 221 N.W.2d at 166.

Here, the trial court granted NewMech standing; NewMech is available to challenge ISD's failure to follow the PWA. Furthermore, in *Snyder's Drug* the purpose of MSCF was to represent senior citizens—persons directly and disproportionately injured by the challenged regulation. In contrast, Local 126 represents the interests of its members, not taxpayers in general. We hold that the trial court properly denied Local 126 standing.

4. *Application of PWA.* Debt service equalization aid is available to eligible school districts for repayment of principal and interest on bonds issued to finance construction. *See* Minn.Stat. § 124.95, subd. 2 (1992). Each year, the school district determines a property tax levy which includes, if necessary, a debt service levy. Under the debt service equalization program, the state pays part of a district's debt service levy with debt

service equalization funds, enabling the district to reduce its property tax levy by the same amount. *Minnesota's Debt Service Equalization Program for K–12 School Districts,* Minnesota House of Representatives' Research Department, (Jan.1993). The state allocates these funds to the school district's debt redemption fund which the district uses to pay principal and interest on bonds.

The PWA provides that:

It is in the public interest that public buildings and other public works be constructed and maintained by the best means and highest quality of labor reasonably available and that persons working on public works be compensated according to the real value of the services they perform. It is therefore the policy of this state that *wages of laborers, workers, and mechanics on projects financed in whole or in part by state funds should be comparable to wages paid for similar work in the community as a whole.*

Minn.Stat. § 177.41 (1992) (emphasis added).

Appellants argue that debt service equalization aid constitutes state financing under the PWA. The trial court found that this aid is not financing. Although we credit the trial court's able analysis, we disagree with its conclusion.

The PWA does not define "financed." Finding the term ambiguous, the trial court began by analyzing the legislative history of the PWA. After citing a discussion during a House of Representatives Labor Management Relations Committee Hearing, each party argues that the legislative history supports its position. The trial court, however, found the history unclear as to the degree to which the legislature intended debt service equalization aid to constitute financing. It then proceeded to determine whether the statute should be narrowly or liberally construed.

The trial court found that the statute should be construed narrowly. In its analysis, the trial court focused on whether the PWA is primarily a penal or remedial statute. Generally, courts construe penal statutes narrowly and remedial statutes liberally. *Kryzer v. Champlin Am. Legion No. 600,* 481

N.W.2d 98, 102 (Minn.App.1992), *rev'd on other grounds,* 494 N.W.2d 35 (Minn.1992); *Harrison v. Schafer Constr. Co.,* 257 N.W.2d 336, 338 (Minn.1977).

The trial court noted that a person or an entity violating the PWA is guilty of a misdemeanor. Minn.Stat. § 177.43, subd. 5 (1992). It reasoned that because NewMech alleges acts that subject a violator to criminal sanctions, the statute is penal.

Notwithstanding, NewMech and the taxpayers compare the PWA to other labor and employment statutes that contain both criminal penalties and civil remedies. They argue that such statutes have been characterized as remedial when the civil remedy is pursued. NewMech seeks equitable relief. But the PWA contains only a criminal penalty. Therefore, the trial court characterized the PWA as penal and construed it narrowly. *See Muskegon Bldg. & Constr. Trades v. Muskegon Area Intermediate Sch. Dist.,* 130 Mich.App. 420, 343 N.W.2d 579, 587 (1983) (Michigan's prevailing wage act contains penal provisions and consequently must be strictly construed).

Based on this conclusion, the trial court found that "financed" does not encompass debt service equalization aid. The trial court noted that "financed" must be defined according to its common and approved usage. Minn.Stat. § 645.08(1) (1992). It found:

Webster's *New Lexicon of the English Language Dictionary* defines the verb "finance" as follows: "to provide with money for; to raise the money for." *New Lexicon Dictionary,* p. 352 (1988 ed.).

It is undisputed that ISD issued bonds to secure money for school construction and that the state provides debt service equalization aid to pay principal and interest due on those bonds. The trial court reasoned, however, that the sale of bonds alone financed the construction because the bonds raised the money to pay for the school construction in the first instance. It further noted that state debt service equalization aid used to pay principal and interest on bonds did not directly pay construction costs. Based on its view that finance must be construed narrow-

ly, the court concluded that this aid does not finance a project. We disagree.

■ Whether narrowly or liberally construed, "financed" must be held to its plain meaning. The trial court found that common usage of finance involves two elements—(1) raising money—(2) to pay for something. The trial court concentrated upon the second element and confined finance to the payment of construction costs from bond revenues. We believe that equal attention must be given to the first element, the raising of money.

Unless money is raised by donation (a situation not present here), a means of repayment is a commonly understood integral and inescapable part of the money raising process. Raising money is inevitably connected to repayment of the money raised. Since the state is contributing debt service equalization aid to repay the money raised by selling bonds, we conclude that the state is a participant within the plain meaning of "financed."

In reaching its conclusion, the trial court relied heavily on a Michigan case with facts similar to those before us. *See Muskegon,* 343 N.W.2d at 580–81. Michigan has a statute similar to Minnesota's PWA. In *Muskegon,* the school board bought a school with the intention of remodeling it. *Id.* at 587. The plaintiff did not argue that debt service equalization aid constitutes state financing. Indeed, *Muskegon* turned on the interpretation of "project" not "financed". *Id.*

The plaintiffs argued that because some state money was used to buy the school, the remodeling project was partially financed by the state. *Id.* The court found that Michigan's prevailing wage act did not apply because the purchase of, and the contemplated construction work on, a school building is not a "project" under the act. *Id.* Accordingly, we decline to rely on *Muskegon.*

Finally, the trial court cited the Financial Assistance Limitations Act (FALA) to support its conclusion. Minn.Stat. § 116J.871 (1992). The state provides financial assistance to persons and entities for economic development projects. *See id.* This financial assistance expressly requires payment of wages in compliance with the PWA on pro-

jects for which the aid is used. Minn.Stat. § 116J.871, subd. 2. The trial court reasoned that the legislature also would have included such a provision in the debt service equalization aid statute had it intended the PWA to apply.

FALA provides for assistance to persons and nonprofit organizations in addition to local government units. It was therefore necessary for the legislature to inform persons and nonprofit organizations unfamiliar with the PWA that the PWA applies. The PWA otherwise applies to public works involving state funds. Minn.Stat. § 177.41. The absence of such an express provision in the debt service equalization aid statute does not indicate that the legislature intended the PWA not to apply.

Appellants also argue that Homestead and Agricultural Credit Aid received by ISD constitutes state financing under the PWA. Because we find that debt service equalization aid triggers PWA application, we need not address this issue.

We hold that where school construction is paid for by the sale of bonds, and those bonds are repaid in whole or in part by state debt service equalization funds, the school construction is "financed" by state funds. The PWA therefore applies to the construction contracts entered into by ISD.

## DECISION

We affirm the trial court's grant of standing to NewMech and denial of standing to Local 126. We reverse the trial court's determination that debt service equalization aid is not state financing under the PWA. We remand to the trial court for determination and implementation of such relief, injunctive or otherwise, as is appropriate in accordance with law.

**Affirmed in part, reversed in part and remanded.**