STATE of Minnesota, by Hubert H. HUMPHREY, III, Its Attorney General, Plaintiff,

and

Blue Cross and Blue Shield of Minnesota, Respondent,

v.

PHILIP MORRIS INCORPORATED, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Petitioners,

B.A.T. Industries, P.L.C., Defendant,

Lorillard Tobacco Company, The American Tobacco Company, Liggett Group, Inc., The Council for Tobacco Research–U.S.A., Inc., The Tobacco Institute, Inc., Petitioners.

No. C1–95–1324.

Supreme Court of Minnesota.

July 25, 1996.

Michael V. Ciresi, Roberta B. Walburn, Tara D. Sutton, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Respondent Blue Cross and Blue Shield of Minnesota and Special Attorneys for Plaintiff the State of Minnesota.

Michael A. Lindsay, Peter W. Sipkins, Robert A. Schwartzbauer, Dorsey & Whitney, Minneapolis, for Appellant Philip Morris Incorporated.

Byron E. Starns, John W. Getsinger, Leonard, Street and Deinard, Professional Association, Minneapolis, for Appellant The American Tobacco Company.

Jack M. Fribley, Faegre & Benson, Professional Limited Liability Partnership, Minneapolis, for Appellant Brown & Williamson Tobacco Corporation.

David G. Martin, Doherty, Rumble & Butler, St. Paul, for Appellant Lorillard Tobacco Company.

James S. Simonson, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for Appellant R.J. Reynolds Tobacco Company.

Gary J. Haugen, Maslon, Edelman, Borman & Brand, Minneapolis, for Appellant The Council for Tobacco Research—U.S.A., Inc.

George W. Flynn, Cosgrove, Flynn & Gaskins, Minneapolis, for Appellant The Tobacco Institute, Inc.

Robert V. Atmore, Lindquist & Vennum, Minneapolis, for Appellant Liggett Group, Inc.

Gerald L. Svoboda, Richard G. Jensen, Fabyanske, Svoboda, Westra, Davis & Hart, P.A., Minneapolis, for Defendant B.A.T. Industries P.L.C.

## OPINION

GARDEBRING, Justice.

In this case we are asked to determine whether Blue Cross and Blue Shield of Minnesota (Blue Cross), a Minnesota health care organization, has standing to sue a number of tobacco companies on various theories, all relating to the health of Minnesotans who have smoked cigarettes over an extended period of time. The trial court denied the

motion of the tobacco companies to dismiss Blue Cross for lack of standing and the court of appeals refused to hear the request by the tobacco companies for discretionary review of this determination. Believing this to be an important legal issue, we granted review. We hold that Blue Cross has the necessary interest in this matter to pursue its statutory and common law antitrust and consumer claims as well as its equitable claims, but lacks standing on its tort theory. Therefore, we affirm in part and reverse in part the decision of the trial court.

In 1994, Blue Cross and the State of Minnesota commenced this litigation, one of a series of similar lawsuits across the country, against five tobacco companies and two tobacco trade associations. The heart of the claims, which are expressed under several legal theories, is that the tobacco companies illegally conspired to suppress research on the deleterious effects of smoking and to manipulate nicotine levels in cigarettes in order to induce nicotine addiction in smokers. The plaintiffs also allege that the tobacco industry undertook a duty to protect the public health by its assertions that it would cooperate with public health authorities and that it accepted the preservation of public health as a basic industry responsibility.

Blue Cross is a non-profit Minnesota corporation, incorporated under the Minnesota Nonprofit Health Service Plan Corporations Act, Minn.Stat. ch. 62C. The Act provides that nonprofit health service corporations were created:

> to promote a wider, more economical and timely availability of * * * health services for the people of Minnesota, through nonprofit, prepaid health service plans, and thereby advance public health * * *.

Minn.Stat. § 62C.01, subd. 2 (1994). It and its corporate affiliates comprise the only nonprofit health service plan incorporated pursuant to this Act. Blue Cross therefore sees itself as having a broader responsibility for the preservation of public health than an ordinary health insurance entity.

According to its complaint, Blue Cross contracts with numerous health care service providers in the State of Minnesota, including 12,000 doctors and clinics, 135 hospitals and 6000 allied health care providers. It also contracts with private employers and political subdivisions to provide prepaid health care services for employees and dependents, smokers and nonsmokers alike, and charges a fixed premium for this service. By virtue of these contractual relationships, Blue Cross is a direct purchaser of health care.

In their joint complaint, the State of Minnesota and Blue Cross pled nine causes of action: one count of breach of an assumed special duty to render services aimed towards the protection of health and the study of the deleterious effects of tobacco; two counts of violating Minnesota's antitrust statute; four counts of deceptive and unfair trade practices in violation of Minnesota statutory and common law; and two equitable claims, restitution and unjust enrichment. Blue Cross alleges damages resulting from the fact that it has paid and will pay substantially higher amounts to its contracted health care providers due to the increased cost of health care services for treatment of smoking-related illnesses in its nicotine-addicted consumer/patients.

The defendant tobacco companies moved the trial court to dismiss Blue Cross from the suit for lack of standing because Blue Cross had passed through its increased expenditures for health care to its subscriber groups as premium increases and therefore had suffered no compensable injury. Furthermore, as the tobacco companies alleged Blue Cross had suffered no injury, they also moved the trial court to dismiss counts 1, 2, and 3—the tort and two antitrust claims—for failure to state a claim. Blue Cross opposed the motion and moved for judgment on the pleadings.

The trial court denied both motions. With regard to Blue Cross's motion, the trial court held it to be premature. It advanced the following reasons for its denial of the tobacco companies' motion to remove Blue Cross for lack of standing: 1) Blue Cross is the natural plaintiff for this suit and best able to pursue the claim because it has direct knowledge of the matter at issue and because any recovery will benefit Blue Cross subscribers directly; 2) whether or not Blue Cross actually re-

couped all its costs is a fact question to be answered after full discovery; 3) Blue Cross is not too remote a plaintiff to complain of harm allegedly caused by defendant tobacco companies; 4) as a health organization, Blue Cross has and will suffer a direct negative impact as a result of any conspiracy among the tobacco companies; 5) Blue Cross seeks relief independent from that available to smokers, such as pain and suffering. Finally, regarding the motion to dismiss the tort and antitrust claims, the trial court held that in the instance of the tort claim, it would not rule on the soundness of Blue Cross's tort theory that the tobacco companies had breached a duty independent of any it might owe its smoking customers. On the antitrust claims, the trial court noted that Minnesota has a broad antitrust standing statute and denied the motion.

On appeal of the standing determinations, the court of appeals held that the tobacco companies had not established that reversal of the trial court's order would obviate further proceedings and therefore denied review. Moreover, the tobacco companies did not appeal the trial court's denial of their motion to dismiss the tort and antitrust claims. Thus, the only issue before this court is the question of whether Blue Cross has standing to bring a cause of action under any of the four theories upon which it relies.

■ Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court. *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972). If a plaintiff lacks standing to bring a suit, the attempt to do so fails. Standing is acquired in two ways: either the plaintiff has suffered some "injury-in-fact" or the plaintiff is the beneficiary of some legislative enactment granting standing. *Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy*, 301 Minn. 28, 31–32, 221 N.W.2d 162, 165 (1974). The goal of the standing requirement is to ensure that issues before the courts will be "vigorously and adequately presented." *Channel 10, Inc. v. Independent Sch. Dist. No. 709, St. Louis County*, 298 Minn. 306, 314, 215 N.W.2d 814, 821 (Minn. 1974); *Twin Ports Convalescent, Inc. v.*

*Minnesota State Bd. of Health*, 257 N.W.2d 343, 346 (Minn.1977).

Because our analysis of standing turns on the specific statutory or common law requirements of each type of claim advanced by Blue Cross, we analyze each of the four categories of claims separately.

### Tort

■ The requirements of a tort claim are, of course, familiar: "(1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury." *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954).

■ There is no claim by Blue Cross that the tobacco companies owed it a duty under any traditional theory of tort law. Instead, its claim is that the tobacco companies assumed a "special duty" by virtue of public representations made since the 1950s, when the connection between smoking and cancer was first established. However, the gravamen of this case is whether or not the injury suffered by Blue Cross is sufficiently traceable to tortious conduct on the part of the tobacco companies.

■ It is a long-standing tenet of tort law that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922). Minnesota has recognized this rule. *Thelen v. Spilman*, 251 Minn. 89, 97, 86 N.W.2d 700, 706 (1957); *see also Isler v. Burman*, 305 Minn. 288, 295, 232 N.W.2d 818, 822 (1975). The Restatement has reflected this principle as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

Thus, a person may, by conduct, assume a duty where one did not previously exist and be liable for the failure to exercise due care in the performance of that duty. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn.1979) (citing *Isler, supra*); *see* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 56, at 378 (5th ed. 1984). A number of decisions indicate that a mere gratuitous *promise* will not impose any duty, even if the plaintiff suffers as a result of reliance on the promise. *Prosser and Keeton, supra*, at 379. However, not only are there a good many cases to the contrary, but, when a defendant actually *begins performance* of the promise, courts are significantly more at ease imposing a duty. *Id.* at 379–80.

According to Blue Cross's complaint, the duty at issue here, as defined by the tobacco companies' representations during the 1950s, was assumed as to "those whose task it is to safeguard the public health," and Blue Cross is among those protectors of the public health. Blue Cross contends that the tobacco companies firmly asserted that their products were not injurious to health and, furthermore, as evidence of their good faith belief in this assertion, "pledg[ed] aid and assistance to the research effort into all phases of tobacco use and health" and "accept[ed] an interest in people's health as a basic responsibility, paramount to every other consideration in [their] business." These, and other, similar statements, argues Blue Cross, indicate that the tobacco companies had a direct duty to Blue Cross, as a protector of the public health, which they breached intentionally.

In support of this argument, Blue Cross casts itself as a unique statutory creation, whose obligation as a direct purchaser of health care distinguishes it in a significant way from the ordinary indemnity insurer. It likens itself to Blue Shield of Texas, which the Supreme Court has said was neither an insurance nor an indemnity company, noting that "[t]he latter are concerned with risk * * * [while Blue Shield] is concerned principally with getting service rendered to its members and doing so at lower prices made possible by quantity purchasing * * *." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 228, 99 S.Ct. 1067, 1082, 59 L.Ed.2d 261 (1979) (citing *Jordan v. Group Health Ass'n*, 107 F.2d 239 (D.C.Cir.1939)). It also relies upon *Kartell v. Blue Shield of Massachusetts, Inc.* where then-Judge Breyer observed that "from a commercial perspective, Blue Shield in essence 'buys' medical services for the account of others." 749 F.2d 922, 925 (1st Cir.1984), *cert. denied*, 471 U.S. 1029, 105 S.Ct. 2040, 2049, 85 L.Ed.2d 322 (1985). Like Blue Shield of Massachusetts, Blue Cross also enters into contracts with health care providers to furnish services to employees of Blue Cross subscribers. It argues that this dual contractual scheme differentiates Blue Cross from the typical insurance company.

The Michigan Supreme Court carefully analyzed this difference in a declaratory judgment action concerning the extent of the Michigan State Insurance Commissioner's authority to regulate Blue Cross and Blue Shield of Michigan. *Blue Cross & Blue Shield of Michigan v. Demlow*, 403 Mich. 399, 270 N.W.2d 845 (1978). It observed: "[Blue Cross and Blue Shield of Michigan] is not an insurance company in the usual sense of the term." *Id.* 270 N.W.2d at 849. The court noted that insurance companies, which have contracts only with their policy holders, do not enjoy this unique dual contractual status. Therefore, the Michigan Blue Cross organization, according to the court, has "direct access to both sides of the health care equation." *Id.*

The defendant tobacco companies reject Blue Cross's view of itself as a uniquely situated protector of the public health and argue that it is simply another insurance company, whose remedy, if any, lies in its statutory and common law right to subrogation. From the tobacco companies' point of view, they are linked to Blue Cross only through the smoker, who, in turn is linked to Blue Cross through the smoker's employer, which has contracted with Blue Cross to pay the health care costs of the smoker. If a tort has been committed, argue the tobacco com-

panies, it was against the smoker and does not involve some nebulous claim arising from an assumed duty. Blue Cross is two steps removed from any alleged tort involving the smoker and, therefore, if it wishes to recover, it must initiate a subrogation action against the tobacco companies. In such an action, Blue Cross would stand in the shoes of the smoker, and the tobacco companies would be able to avail themselves of any defenses they might have had against the smoker, such as assumption of risk. Defendants contend, therefore, that Blue Cross is trying to characterize as a direct action what should be a subrogation claim.

The tobacco companies rely principally on *Northern States Contracting Co. v. Oakes,* 191 Minn. 88, 253 N.W. 371 (1934). There, this court said that an employer could not recover the costs of increased worker's compensation premiums paid as a result of a tort which resulted in the wrongful death of one of its employees. The defendant in *Northern States* negligently caused the death of a Northern States employee and Northern States sought to recover its increased insurance premium costs. This court, however, ruled that the defendant's negligence was simply too remote from the injury to permit recovery. *Id.* at 91, 253 N.W. at 372.

Thus, our task is to determine whether Blue Cross's unusual role in the delivery of health care in Minnesota removes it from the reach of our ruling in *Northern States.* We conclude that it does not. While we believe that Blue Cross has been injured, we conclude that the injury, albeit substantial, as in the facts of *Northern States,* is simply too remote. It is true that Blue Cross occupies a different niche in the complex web of health care institutions than that of indemnity or insurance companies; however, these differences in legal relationship to providers and patients do not, in our view, overcome the need for a closer connection between the injury and the alleged tortfeasor.

The legal concept of standing developed in recognition of the common-place notion that those most directly injured would be most likely to litigate effectively any claims arising out of that injury. Certainly Blue Cross would be a vigorous litigant, but it remains that such vigor cannot substitute for a direct interest in the matter at issue. While, as Blue Cross notes, duty arising from the same facts may in some instances be owed to more than one entity, here the injury to Blue Cross appears to derive from injuries to its consumers, the smokers. While the tobacco companies may have indeed made promises to public health authorities regarding research and support of public health, the breach of those promises resulted in increased costs to Blue Cross only because its consumer-patients remain more seriously addicted to nicotine for longer periods of time, thus requiring more medical care. Therefore, we hold that Blue Cross does not have standing to pursue its tort claim, based on assumption of a "special duty," against the defendant tobacco companies in this action.

## Statutory Claims

The fact that we find that Blue Cross lacks standing to pursue a tort action, however, has no impact on our decision as to Blue Cross's claims arising under Minnesota's consumer protection and antitrust statutes. The legislature may, by statute, expand the connection between conduct and injury necessary to permit suit. On these claims, we hold that the broad grants of standing within the statutes themselves reach Blue Cross and allow it to join the State of Minnesota in pursuit of relief for these claims.

In their joint complaint, the State and Blue Cross allege violations of Minnesota's antitrust statute as well as consumer protection statutes relating to consumer fraud, unlawful and deceptive trade practices, and false advertising. Each of these statutes contains specific authorizations for suit and each creates a private cause of action for any party injured directly or indirectly by a violation of the statute. These provisions reflect a clear legislative policy encouraging aggressive prosecution of statutory violations.

█ We begin with antitrust. The Minnesota Legislature has broadly granted standing to maintain private antitrust suits. The antitrust statute states:

*Any person,* any governmental body, or the state of Minnesota or any of its subdivisions or agencies, *injured directly or in-*

*directly* by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.

Minn.Stat. § 325D.57 (1994) (emphasis added). It is clear that this expansive grant of standing reaches the injuries suffered by Blue Cross.

Statutory grants of standing are quite similarly broad as to consumer protection. Plaintiffs pled four causes of action under the broad heading of consumer fraud. These counts involved violation of Minnesota's Unfair Discrimination and Competition (Minn. Stat. §§ 325D.03–.08, –.69), Unlawful Trade Practices (Minn.Stat. §§ 325D.09–.16), Deceptive Trade Practices (Minn.Stat. §§ 325D.43–.48), and False Statement in Advertisement (Minn.Stat. § 325F.67) statutes. These statutes are generally very broadly construed to enhance consumer protection. *See State v. Alpine Air Products, Inc.,* 500 N.W.2d 788, 790 (Minn.1993).

Standing to bring suit under all but one of the above-mentioned consumer protection statutes is found in the statute enabling and detailing the responsibilities of Minnesota's Attorney General, which contains a provision allowing private actions to seek redress for violations of certain statutes.

> In addition to the remedies otherwise provided by law, *any person injured* by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality.

Minn.Stat. § 8.31, subd. 3a (1994) (emphasis added). The laws listed in subdivision 1 include, *inter alia,* "the unlawful trade practices act (sections 325D.09 to 325D.16), the antitrust act (sections 325D.49 to 325D.66), section 325F.67 and other laws against false or fraudulent advertising * * *." Minn.Stat. § 8.31, subd. 1 (1994). The only statute not listed in subdivision 1 but still pled by plaintiffs is the Uniform Deceptive Trade Practices statute. This statute, however, contains its own legislative grant of standing and, thus, requires no reference to Minn.Stat. § 8.31. It allows any person "likely to be damaged by a deceptive trade practice of another" to seek injunctive relief. Minn.Stat. § 325D.45, subd. 1 (1994). Injury, such as the plaintiffs have alleged, need not be proven. *Id.* Moreover, such injunctive relief is in addition to any relief available at common law for conduct that might also violate this statute. *Id.* at subd. 3.

In the face of these plain statutory grants of standing, the tobacco companies look to what is commonly called the "pass through defense." *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). Similar, but not identical, to the tobacco companies' defense that Blue Cross suffered no injury and could not therefore make out a tort claim, the "pass through defense" is, in essence, the notion that where an injured party "passes through" its damages to another entity that is obligated to pay, there is no actual injury to the first party. *Id.* at 492, 88 S.Ct. at 2231. Here, the tobacco companies argue that because Blue Cross is a non-profit corporation, any increased costs associated with increased medical care needed by its nicotine-addicted consumers will simply be passed on to employer subscribers.

The argument that no injury has been suffered because costs were passed through one entity to customers, consumers, or other entities usually arises in antitrust cases. It has been uniformly rejected in the courts, primarily on the theory that the injury is sustained as soon as the price, artificially raised for whatever reason, has been paid. This pass through argument was first considered and rejected by the U.S. Supreme Court in a 1906 antitrust matter, where Justice Holmes wrote:

> [a] man is injured in his property when his property is diminished. * * * [W]hen a man is made poorer by an extravagant bill we do not regard his wealth as a unity, or

the tort, if there is one, as directed against that unity as an object. We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there.

*Chattanooga Foundry v. Atlanta,* 203 U.S. 390, 399, 27 S.Ct. 65, 67, 51 L.Ed. 241 (1906). Justice Holmes again addressed this argument in 1918 in a case of excessive rate charges arising under federal transportation laws.

> The only question before us is * * * whether the fact that the plaintiffs were able to pass on the damage * * * prevents their recovering the overpayment * * *. The answer is not difficult. The general tendency of the law, in regard to damages at least, is not to go beyond the first step. * * * The plaintiffs suffered losses * * * when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events.

*Southern Pacific Co. v. Darnell–Taenzer Lumber Co.,* 245 U.S. 531, 533–34, 38 S.Ct. 186, 186, 62 L.Ed. 451 (1918).

That the pass through defense is untenable appears equally evident outside of the context of antitrust and laws relating to regulated industry. In *Adams v. Mills,* for example, the plaintiffs prevailed in a tort action and sought an order to enforce the judgment from the Interstate Commerce Commission. *Adams v. Mills,* 286 U.S. 397, 405, 52 S.Ct. 589, 591, 76 L.Ed. 1184 (1932). The defendants disputed the ICC order, employing the pass through defense. Relying on *Southern Pacific,* Justice Brandeis wrote that "[n]either the fact of subsequent reimbursement * * * nor the disposition which may hereafter be made of the damages recovered, is of any concern to the wrongdoers." *Adams,* 286 U.S. at 407, 52 S.Ct. at 591.

Relying on these cases, the Court firmly rejected the pass through defense for anti-

trust cases in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 494, 88 S.Ct. 2224, 2232, 20 L.Ed.2d 1231 (1968). The Court subsequently rejected offensive use of the pass through theory by "indirect purchasers"—those to whom the costs were ultimately passed. The Court held that the same reasons which negated pass through as a defense also applied when it was used as the basis for a recovery and therefore barred indirect purchasers from suing in antitrust. *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736, 97 S.Ct. 2061, 2069, 52 L.Ed.2d 707 (1977).

After *Illinois Brick* was decided, however, Minnesota acted to change its law to allow anyone to sue in antitrust. *See* Act of April 24, 1984, ch. 458, § 1, 1984 Minn.Laws 228. Although we have not before considered the relationship of this statutory change to *Illinois Brick,* the court of appeals has held that the legislative history of this enactment, codified at Minn.Stat. § 325D.57, indicated that it was a direct response to the *Illinois Brick* decision. *Keating v. Philip Morris, Inc.,* 417 N.W.2d 132, 136 (Minn.App.1987). We concur with this analysis and conclude that it was the intent of the Minnesota legislature to abolish the availability of the pass through defense by specific grants of standing within statutes designed to protect Minnesota citizens from sharp commercial practices.[1] As the pass through defense is unavailable to the tobacco companies, Blue Cross has standing to sue under the various consumer protection theories, including antitrust, alleged in its complaint.

### Equitable Claims

■ We also find that Blue Cross has standing to seek the equitable relief pled in its complaint in the form of claims of performance of another's duty to the public and unjust enrichment. Our conclusion is based upon the well-established notion of "associational standing," which recognizes that an

1. Even absent the statutory grant of authority in the antitrust statute, Minn.Stat. § 325D.57 (1994), we believe Blue Cross would have standing on the antitrust claim. We find persuasive the reasoning of the 7th Circuit in a recent case, *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic and Security Health Plan of Wis., Inc.,* 65 F.3d 1406 (7th Cir.1995), *cert. denied,* — U.S.

—, 116 S.Ct. 1288, 134 L.Ed.2d 233 (1996). There, Chief Judge Posner found that Blue Cross of Wisconsin was the proper party to assert an antitrust claim, inasmuch as the company was the direct purchaser of health care and thus had a right to sue to collect overcharges, even though each payment was made on behalf of an individual patient. *Id.* at 1414.

organization may sue to redress injuries to itself or injuries to its members. This court adopted this theory in *No Power Line, Inc. v. Minnesota Envtl. Quality Council*, 311 Minn. 330, 334, 250 N.W.2d 158, 160 (1976) and *Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy*, 301 Minn. 28, 221 N.W.2d 162 (1974). Our approach is derived from the seminal case of *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), where the U.S. Supreme Court found standing for a state agency which, in its capacity as representative of the state apple industry, challenged another state's agricultural regulation.

We reject defendant tobacco companies' argument that Blue Cross does not come within the reach of associational standing because it has no "members." This reading of the theory is too narrow in light of our approval of standing as to the plaintiff Minnesota Public Interest Research Group, also without members, in *Snyder's Drug Stores, Inc.*, 301 Minn. at 32, 221 N.W.2d at 165. Furthermore, our approach is consistent with federal cases which relax requirements for associational standing where the relief sought is equitable only. *See Warth v. Seldin*, 422 U.S. 490, 515, 95 S.Ct. 2197, 2213,

45 L.Ed.2d 343 (1975); *United Auto. Workers v. Brock*, 477 U.S. 274, 287, 106 S.Ct. 2523, 2531, 91 L.Ed.2d 228 (1986). Thus, while we determine that Blue Cross has standing to pursue the equitable claims pled in its complaint, we note that such standing is limited to pursuit of injunctive relief on these claims.

In sum, we find that plaintiff's complaint has sufficient strength to go forward on its consumer protection and equitable relief claims. Therefore, we affirm the trial court's denial of the defendant tobacco companies' motion to dismiss for failure to state a claim and for lack of standing with respect to all of plaintiff's claims, save the tort claim. On the tort claim, we reverse the trial court and remand for proceedings consistent with this opinion.

PAGE and STRINGER, JJ., took no part in the consideration or decision of this case.