## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A14-0679

Save Mille Lacs Sportsfishing, Inc., et al.,
Petitioners,

vs.

Minnesota Department of Natural Resources,
Respondent.

**Filed February 17, 2015**
**Rule declared valid**
**Minge, Judge***
**Concurring specially, Hudson, Judge**

Department of Natural Resources
File No. 6264.0400, subpart 4

Erick G. Kaardal, Mohrman, Kaardal & Erickson P.A., Minneapolis, Minnesota (for petitioners)

Lori Swanson, Attorney General, Oliver J. Larson, David P. Iverson, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Minge, Judge.

## S Y L L A B U S

The absence of a citation to or analysis of a relevant constitutional or common-law principle by an administrative agency in the rulemaking process is not grounds for declaring a rule invalid in a pre-enforcement challenge conducted under Minn. Stat. §§ 14.44, .45 (2014), so long as the legal authority authorizing the rule is identified in the notice of rulemaking.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**MINGE**, Judge

In this pre-enforcement declaratory judgment challenge to an administrative rule regulating fishing on Mille Lacs Lake, petitioners assert that the rule is invalid because: (1) the administrative record does not reference or discuss the relevance of article XIII, section 12, of the Minnesota Constitution (the Preservation Provision) or the public-trust doctrine, and (2) the rule is beyond the authority of the Minnesota Department of Natural Resources (the DNR) under Minn. Stat. § 14.69 (2014). We declare the rule valid against these challenges.

**FACTS**

Petitioners have brought a pre-enforcement challenge to Minn. R. 6264.0400, an emergency rule adopted by the DNR to govern fishing on Mille Lacs Lake, Minnesota's second largest inland lake. 38 Minn. Reg. 1379 (Apr. 21, 2014) (to be codified at Minn. R. 6264.0400, subp. 4 (Supp. 2014)). Mille Lacs Lake contains several species of fish, including walleye, northern pike, and largemouth and smallmouth bass.

The DNR regulates the fish that may be harvested from Mille Lacs Lake in conjunction with Native American communities that possess treaty fishing rights. Each spring, the DNR determines a "harvestable surplus" of fish by calculating the pounds of fish that, if harvested, would not result in a decline of the fishery. The harvestable surplus is then allocated between the Native American communities and the state, and the DNR considers whether it is necessary to establish rules restricting fishing on the lake to ensure that the state does not exceed its allocation.

2

The calculated, harvestable surplus of fish from Mille Lacs Lake in 2014 declined drastically, as compared to the previous year. As a result, the DNR determined that significant restrictions needed to be established for the 2014 fishing season to ensure that the state did not exceed its correspondingly reduced allocation. The DNR crafted several proposals to limit the taking of fish, presented those proposals to interested parties, and solicited public comment. Based in part on the responses received, the DNR adopted an emergency rule that restricted the size and number of northern pike, bass, and walleye that each person could take and limited the season for taking largemouth and smallmouth bass.[1] Shortly after the rule went into effect, petitioners filed a petition for declaratory judgment in this court challenging the validity of the rule.

## ISSUES

I.     Do petitioners have standing to bring this action?

II.     Is the rule invalid because the administrative record does not specifically refer to the Preservation Provision or the public-trust doctrine?

III.     Does the scope of judicial review stated in Minn. Stat. § 14.69 apply to a pre-enforcement declaratory judgment proceeding?

## ANALYSIS

## I.

At the outset we address the issue of standing. "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). Minnesota

---

[1] The rule also prohibited fishing on the lake from 10:00 p.m. until 6:00 a.m. This nighttime-fishing ban was later lifted and is not a part of this appeal.

3

Statute section 14.44 (2014) grants standing for pre-enforcement challenges to rules to any petitioner who demonstrates that "the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner." Minnesota courts have held that "Standing is acquired when a party has suffered some 'injury-in-fact' *or* when a party is the beneficiary of some legislative enactment granting standing." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 18 (Minn. App. 2003) (citing *Philip Morris Inc.*, 551 N.W.2d at 493).

The petitioners include non-profit associations committed to preserving sport fishing in Mille Lacs Lake and more broadly, residents of the Mille Lacs area who are actively involved in fishing in that lake, and Twin Pines Resort, Inc. that serves the fishing community on that lake. The Preservation Provision recognizes fishing as an important part of the heritage of all Minnesotans. Subject to compliance with reasonable regulation, the Preservation Provision essentially recognizes that fishing is a right of all Minnesotans who obtain a fishing license. The residents claim that they and others of like mind have a strong interest in fishing Mille Lacs Lake in particular and that fishing this lake is an important part of their way of life and heritage. The resort asserts that diminution of fishing opportunities will adversely affect its business and the business of similarly situated resorts and other enterprises. The emergency regulation at issue in this proceeding limits the number and size of fish that may be kept and shortens the fishing season for bass. We note that for many years controversies concerning fishing this lake have been the subject of high-profile litigation. *See Minnesota v. Mille Lacs Band of*

4

*Chippewa Indians*, 526 U.S. 172, 175–88, 119 S. Ct. 1187, 1191–97 (1999) (discussing previous challenges to validity of fishing rights).

The concurrence would dismiss the petition for lack of standing. The DNR did not raise the issue of standing in this proceeding.[2] Based on the nature and interests of the petitioners and the broad statutory language establishing a right to challenge regulations before enforcement, we decline to sua sponte dismiss this action on the basis of standing.

## II.

We next consider whether the DNR was required to address or at least refer to the Preservation Provision and the public-trust doctrine in adopting the rule in question. The Preservation Provision is entitled "Preservation of Hunting and Fishing" and states that "Hunting and fishing and the taking of game and fish are a valued part of our heritage that shall be forever preserved for the people and shall be managed by law and regulation for the public good." Minn. Const. art. XIII, § 12. The Preservation Provision recognizes the "need for effective regulation to protect the viability of our state's fish and game resources." *State v. Colosimo*, 669 N.W.2d 1, 6 (Minn. 2003). The public-trust doctrine is a common-law principle, adopted in Minnesota, providing that the state, in its sovereign capacity, holds absolute title to "all . . . navigable waters and the soil under them for [the] common use" and imposes a duty upon the state to maintain those waters for navigation and other public uses. *State v. Longyear Holding Co.*, 224 Minn. 451, 472–73, 29 N.W.2d 657, 669–70 (1947) (quotation omitted). Petitioners assert that the

---

[2] The DNR did not challenge petitioners' standing in its brief and discussed the issue at oral argument only after the panel inquired about it.

DNR was required to address or at least make specific reference to both the Preservation Provision and the public-trust doctrine in the administrative record of this emergency rule to demonstrate that it properly considered petitioners' cultural heritage of fishing on Mille Lacs Lake and the heritage implications of the public-trust doctrine. Petitioners do not raise the issue of whether the rule violates the Preservation Provision or the public-trust doctrine.

## A. Scope of Pre-Enforcement Review

Our evaluation of petitioners' claim involves several considerations. First, we consider the statute authorizing pre-enforcement review. This court has been granted jurisdiction to determine the validity of a rule in a pre-enforcement declaratory judgment action. Minn. Stat. § 14.44. A pre-enforcement challenge "questions the process by which the rule was made and the rule's general validity before it is enforced against any particular party." *Minn. Chamber of Commerce v. Minn. Pollution Control Agency*, 469 N.W.2d 100, 102 (Minn. App. 1991) (quotation omitted), *review denied* (Minn. July 24, 1991). Because the "[b]road and far-reaching scrutiny of a rule or regulation, based upon hypothetical facts, is a premature exercise of the judiciary," our standard of review is more restricted in a pre-enforcement proceeding than on appeal from a contested enforcement proceeding, where the validity of the rule as applied to a particular party is being adjudicated. *Id*. at 102–03 (quotation omitted).

Our authority to review the validity of a rule at the pre-enforcement stage is limited to three distinct inquiries: (1) whether the rule violates a constitutional provision; (2) whether the rule exceeds the statutory authority of the agency; and (3) whether the

rule was adopted without compliance with statutory rulemaking proceedings. Minn. Stat. § 14.45 (2014). We do not possess the authority to expand the scope of judicial review at a pre-enforcement proceeding. *See Manufactured Hous. Inst. v. Pettersen*, 347 N.W.2d 238, 241 (Minn. 1984) (limiting judicial review to those "three stated legal issues" at the pre-enforcement stage).

### B. Citing Authority in Rulemaking

Petitioners correctly assert that the DNR did not state on the record that it considered the Preservation Provision or the public-trust doctrine before it adopted the emergency rule. We acknowledge that some reference to statutory or other legal authority is required in rulemaking. The Minnesota Administrative Procedure Act, Minn. Stat. §§ 14.001–.69 (2014), requires that Minnesota agencies provide a "citation to the most specific statutory authority for the proposed rule" when the agency gives notice of rulemaking proceedings. Minn. Stat. § 14.14, subd. 1a (2014); *see also* Minn. Stat. § 14.22, subd. 1 (2014) (governing notice of proposed adoption of rules without hearing).[3] The statutes that govern the DNR's authority to enact emergency hunting and fishing rules do not impose any additional requirements that are relevant to petitioners' claim. *See generally* Minn. Stat. §§ 97A.0451–.0459 (2014) (establishing procedures for

---

[3] Federal administrative law requires federal agencies to expressly cite relevant legal authority when the agency publishes notice of general rulemaking in the Federal Register. *See* 5 U.S.C. § 553(b)(2) (2012) (requiring "reference to the legal authority under which the rule is proposed"). The federal statute does not require citation to constitutional provisions or common-law doctrine when, as here, the agency possesses valid statutory authority to adopt the rule.

the enactment of emergency hunting and fishing rules).[4] Petitioners do not explain, nor can we discern, how this asserted omission from the administrative record fits into any of the three distinct grounds under which we may review the validity of this rule pursuant to Minn. Stat. § 14.45.

Here, the DNR, in providing notice of the rule, stated its statutory authority under Minn. Stat. §§ 97A.045, subd. 2 (2014); 97C.005, subd. 3 (2014); and 97C.401, subd. 1 (2014). These statutes, respectively, authorize the DNR to: (1) prohibit the taking of animals; (2) establish "open seasons, limits, methods, and other requirements for taking fish"; and (3) limit the number of fish a person may possess. *See id.* The plain language of these statutes is not inconsistent with the Preservation Provision's mandate that the state "manage and regulate fishing to preserve our natural resources," *Colosimo*, 669 N.W.2d at 7. We have previously stated that the Preservation Provision, in conjunction with other authority, establishes that the state maintains "control over when, how, and the extent to which fish can be taken," provided that the state does not exercise its authority "arbitrarily." *Mertins v. Comm'r of Natural Res.*, 755 N.W.2d 329, 340 (Minn. App. 2008). The DNR's citation to statutory authority demonstrates that it considered the

---

[4] Petitioners also contend that the DNR is capable of making findings regarding the effect its rule will have on the heritage of Mille Lacs Lake, citing the process for preparing an Environmental Impact Statement (EIS) and an Environmental Assessment Worksheet (EAW) as examples. *See* Minn. Stat. § 116D.04 (2014) (setting forth EIS standards and procedures); Minn. R. 4410.100 (2013) (noting standards for preparing EAW). But the statutes and regulations governing EIS and EAW do not apply.

objective of the Preservation Provision in its analysis, even if that Provision was not specifically referenced.[5]

We note that there are several cases in which we have reviewed a rule to ensure that it complies with relevant constitutional provisions. *See, e.g.*, *Minn. Chamber of Commerce*, 469 N.W.2d at 107 (evaluating rule's compliance with constitutional due process standards); *Peterson v. Minn. Dep't of Labor & Indus.*, 591 N.W.2d 76, 78–79 (Minn. App. 1999) (evaluating rule's compliance with equal protection rights), *review denied* (Minn. May 18, 1999). But there is a difference between our reviewing a rule to determine whether it complies with a constitutional requirement and a mandate that agencies specifically address all potentially relevant constitutional provisions during the rulemaking process. That caselaw recognizes the fact that we possess the statutory authority to evaluate whether a rule is constitutionally sound. *See* Minn. Stat. § 14.45 (permitting judicial review of whether agency rule complies with constitutional provisions). In none of these cases did we declare a rule to be invalid because the agency did not specifically identify arguably relevant constitutional provisions in the underlying administrative record or specifically articulate how it considered a constitutional provision in formulating the rule. *Cf. Neeland v. Clearwater Mem'l Hosp.*, 257 N.W.2d

---

[5] As stated earlier in this opinion, the record indicates that the DNR analyzed the fish population of Mille Lacs Lake, concluded that significant restrictions were necessary to ensure that the state did not exceed its allocation of the harvestable surplus, and held public meetings to determine the effect that these potential restrictions would have on the local community and economy. On this record, there is no basis to conclude that the DNR acted arbitrarily when it adopted Minn. R. 6264.0400, subp. 4. *See Minn. Chamber of Commerce*, 469 N.W.2d at 104 ("It is difficult to conclude that the MPCA arbitrarily and capriciously failed to consider social and economic factors, when public hearings were held in several locations and when the MPCA responded to public reaction by revising some of the proposed amendments.").

366, 368–69 (Minn. 1977) (administrative agencies lack subject-matter jurisdiction to decide constitutional issues because those issues are within exclusive province of the judicial branch).

### C.     Application of the Public-Trust Doctrine

Caselaw in Minnesota on the scope and application of the public-trust doctrine is sparse.  Few reported cases have considered this doctrine.  *See, e.g.*, *Pratt v. State, Dep't of Natural Res.*, 309 N.W.2d 767, 771 (Minn. 1981); *Longyear Holding Co.*, 224 Minn. at 473, 29 N.W.2d at 670; *Nelson v. DeLong*, 213 Minn. 425, 431, 7 N.W.2d 342, 346 (1942); *Larson v. Sando*, 508 N.W.2d 782, 787 (Minn. App. 1993), *review denied* (Minn. Jan. 21, 1994).  The foregoing caselaw has only applied the public-trust doctrine to find that the state is responsible for managing navigable public waters as a trustee for public good.  We acknowledge that the public-trust doctrine has had significant application in some jurisdictions.  *Nat'l Audubon Soc'y v. Superior Court*, 658 P.2d 709, 719 (Cal. 1983); *Lake Beulah Mgmt. Dist. v. State, Dep't of Natural Res.*, 799 N.W.2d 73, 84–86 (Wis. 2011); *see also* Alexandra B. Klass, *Renewable Energy and the Public Trust Doctrine*, 45 U.C. Davis L. Rev. 1021, 1027–32 (2012) (discussing application of public-trust doctrine to state lands and waters).  But no Minnesota caselaw has yet recognized the application of the public-trust doctrine to fishing, and petitioners cite to no such application elsewhere in the United States.  Assuming that fishing resources are within the public-trust doctrine, petitioners' argument that the DNR had an obligation to

10

explicitly refer to the doctrine in adopting the challenged rule is not persuasive.[6] It would be a dramatic new rulemaking principle for us to impose upon agencies an expansive duty to identify and consider an undeveloped and possibly an irrelevant legal principle. Given the myriad of constitutional provisions and plethora of potential common-law theories that could be discussed incident to rulemaking, imposing such a requirement has no basis in precedent and could paralyze the administrative process. The statutes authorizing emergency rulemaking and pre-enforcement review imply that such agency action, and our review, are intended to make the process more flexible and expeditious, not more complicated.[7] *See* Minn. Stat. § 14.44; Minn. Stat. §§ 97A.0451–.0459.

In sum, in this pre-enforcement proceeding, the omission by the DNR of any citation to or consideration of the Preservation Provision or the public-trust doctrine does not affect the validity of Minn. R. 6264.0400, subp. 4.

**III.**

Petitioners also allege that the rule is invalid under Minn. Stat. § 14.69 because it: (1) exceeds the statutory authority or jurisdiction of the agency; (2) was made upon

_____

[6] The DNR's rule was apparently designed to preserve fish as a public resource in Mille Lacs Lake. To this extent, the rule appears consistent with the principles underlying the public-trust doctrine. *See Longyear Holding Co.*, 224 Minn. at 473, 29 N.W.2d at 670 (discussing state's duty to preserve navigable public waters for the public good).

[7] We recognize that the statute does not require that a petitioner raise an objection before the agency to preserve his or her right to challenge the rule in a pre-enforcement declaratory judgment proceeding. Minn. Stat. § 14.44. But our review of the rule is limited to the record. It is difficult for this court to address an objection to a rule if the record does not contain the factual basis for the objection. Here, the record indicates that petitioners had the opportunity to attend several forums and to submit comments to the DNR for its consideration. *See Pettersen*, 347 N.W.2d at 241 (stating that rulemaking proceedings give interested parties considerable opportunity to advance their position at public hearings). There is no indication that an objection was made based on either the Preservation Provision or the public-trust doctrine during the rulemaking process.

11

unlawful procedure; (3) is affected by other errors of law; and (4) is arbitrary and capricious.[8] But section 14.69 applies only on appeal from a final decision in contested case proceedings conducted pursuant to Minn. Stat. §§ 14.63–.68 (2014). Because this statute is not applicable to a pre-enforcement declaratory judgment proceeding, we decline to consider these additional arguments.[9]

## D E C I S I O N

Because the omission from the DNR's administrative record of any reference to the Preservation Provision or the public-trust doctrine is not a basis for declaring Minn. R. 6264.0400, subp. 4, invalid in a pre-enforcement proceeding, we reject petitioners' challenge to the validity of Minn. R. 6264.0400, subp. 4.

**Rule declared valid.**

---

[8] As stated earlier, we note that, except for the DNR's lack of a reference to the Preservation Provision or to the public-trust doctrine, petitioners do not raise the issue of whether there are other deficiencies in the emergency rule addressing fishing in Mille Lacs Lake.

[9] Petitioners also seek attorney fees in their petition for declaratory judgment. A prevailing party "in a civil action or contested case proceeding other than a tort action" may recover fees and expenses from the state if that party "shows that the position of the state was not substantially justified." Minn. Stat. § 15.472(a) (2014). Because petitioners have not established any basis for relief, we do not address this issue.

12

**HUDSON**, Judge (concurring specially)

I agree with the majority that the petitioners are not entitled to a declaration that the challenged rule is invalid. But I write separately because I would not reach the merits of this petition and would instead conclude that petitioners lack standing to challenge the validity of the rule in a pre-enforcement proceeding.

Standing is a doctrine encompassed by the broad concept of justiciability, which relates "to the court's ability to redress an injury through coercive relief." *State ex rel. Sviggum v. Hanson*, 732 N.W.2d 312, 321 (Minn. App. 2007). "The concept of justiciability forms a threshold for judicial action and requires, in addition to adverse interests and concrete assertions of rights, a controversy that allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts." *Id*. The purpose of the standing requirement is to ensure that issues before the courts will be "vigorously and adequately presented." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996) (quotation omitted). "When a lawsuit presents no injury that a court can redress, the case must be dismissed for lack of justiciability." *Hanson*, 732 N.W.2d at 321. Though the DNR does not meaningfully contest petitioners' standing in this matter, the issue of standing is essential to this court's consideration of a case; thus, we may raise the issue of standing by our own accord. *Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27 (Minn. 1989).

In a pre-enforcement challenge to an administrative rule, a petitioner possesses standing only when "the rule, or its threatened application, interferes with or impairs, or

threatens to interfere with or impair the legal rights or privileges of the petitioner." Minn. Stat. § 14.44 (2014). The petitioner's "direct interest" in the validity of the challenged rule must be "different in character from the interest of the citizenry in general." *Rocco Altobelli, Inc. v. State, Dept. of Commerce*, 524 N.W.2d 30, 34 (Minn. App. 1994) (quotation omitted). An organization whose members claim such an interest may file suit "to redress injuries . . . to its members." *Philip Morris Inc.*, 551 N.W.2d at 497–98.

Petitioners' primary contention regarding standing is that they engage in, or have members who engage in, hunting and fishing activities that are relevant to the cultural heritage of Mille Lacs Lake and the sustainability of walleye fishing, which they assert are rights protected by article XIII, section 12, of the Minnesota Constitution. They argue that any rule that inhibits their cultural heritage to hunt and fish constitutes an injury-in-fact sufficient to provide them standing. Petitioners also contend that they possess taxpayer standing to challenge the emergency rules and maintain that Twin Pines Resort, Inc. (the resort), retains standing to challenge the emergency rule because the resort will suffer economic injury from enforcement of the rule.

These arguments are not persuasive. I agree that hunting and fishing are significant aspects of Minnesota's culture and heritage, that the Preservation Provision emphasizes the importance of these rights to the public, and that Minnesota citizens may seek protection of their right to hunt and fish via judicial action in certain instances. *See e.g.*, Minn. Stat. § 97A.420 (2014) (governing seizure of hunting and fishing licenses and process for administrative and judicial review). But here, we are confronted with a pre-enforcement challenge to an administrative rule governing hunting and fishing, a

proceeding that necessitates a stricter standard of review. *Minn. Chamber of Commerce v. Minn. Pollution Control Agency*, 469 N.W.2d 100, 102–03 (Minn. App. 1991), *review denied* (Minn. July 24, 1991). Thus, to establish standing in a pre-enforcement challenge, a petitioner must assert more than "a mere possibility of an injury or mere interest in a problem." *Coalition of Greater Minn. Cities v. Minn. Pollution Control Agency*, 765 N.W.2d 159, 163 (Minn. App. 2009), *review denied* (Minn. Aug. 11, 2009). Rather, the petitioner bringing the action must demonstrate that the "rule is or is about to be applied to the petitioner's disadvantage." *Id.*

Here, the rule does not prohibit petitioners from fishing, but imposes various restrictions on the size and number of fish that petitioners may harvest. [1] Petitioners do not demonstrate that these limitations are certain to cause them harm or injury. They do not claim that they will necessarily exceed the harvest limits established by the rule or assert that they previously possessed the right to harvest an unlimited number of fish from the lake. Petitioners also do not claim that they planned to harvest more fish than permitted by the rule or assert that they have been subject to criminal or civil sanction for violation of these limits. In fact, petitioners identify no harm that is unique to them as opposed to the citizenry in general. Moreover, petitioners have not established that they are without remedy if the rule is subsequently enforced against them; it is possible that they may challenge the validity of the rule in a subsequent judicial or administrative proceeding. Because the harm that petitioners claim amounts only to "mere interest" in a

---

[1] Because the rule's ban on night fishing was lifted, I do not consider whether petitioners have standing to challenge this prohibition.

problem, I would conclude that the claimed injury is insufficient to establish standing. *See id.*

Likewise, petitioners lack taxpayer standing to challenge the validity of the rule. A taxpayer without personal or direct injury possesses standing to "maintain an action that restrains the 'unlawful disbursements of public money . . . [or] illegal action on the part of public officials.'" *Olson v. State*, 742 N.W.2d 681, 684 (Minn. App. 2007) (alteration in original) (quotation omitted). But the party asserting taxpayer standing must identify an unlawful "expenditure made as a result of the challenged [rules]." *Id.* at 685 (holding that challenge to tax exemption could not be pursued solely on taxpayer basis because it did not involve expenditure of tax funds). Petitioners do not identify any illegal expenditure made by the DNR; they do not claim that the rule or the emergency expedited rulemaking process led to an unlawful expenditure of public funds. Accordingly, taxpayer standing is inapplicable here.

Finally, I note that a corporation and its members may possess standing to challenge the validity of a rule when the corporation demonstrates that it has suffered economic injury from enforcement of an administrative rule. *See Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 301 Minn. 28, 32–33, 221 N.W.2d 162, 165–66 (1974) (permitting corporation to file suit on behalf of individual members who suffered economic injury). Here, the resort contends that the fishing restrictions will result in fewer guests patronizing it. I am sympathetic to the possibility that the resort may suffer financial hardship as a result of the fishing restrictions imposed by the rule. But the resort's allegations establish nothing more than a possibility that the manner in which the

rule will be applied will cause economic injury. For the same reasons discussed above, the possibility of economic injury is insufficient to establish standing. *See Coalition of Greater Minn. Cities*, 765 N.W.2d at 163. Because I do not identify any additional grounds on which petitioners possess standing to bring a pre-enforcement declaratory judgment action, I would dismiss the petition for lack of standing.